[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————

No. 14-13577
————————————————

D.C. Docket No. 1:14-cr-00025-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

FREEMAN EUGENE JOCKISCH,

Defendant–Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
————————————————

(May 26, 2017)

Before JORDAN and JULIE CARNES, Circuit Judges, and ROBREÑO,[*] District
Judge.

JULIE CARNES, Circuit Judge:

---

[*]  Honorable Eduardo C. Robreño, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Defendant Freeman Jockisch began an e-mail correspondence with someone he believed to be a 15-year-old girl who, claiming to be bored, had advertised under the "casual encounters" page on Craigslist.  During this e-mail correspondence, Defendant said multiple times that he wanted to make love to the young woman, who identified herself as Sara.  Eventually, the two agreed to meet and Defendant traveled to the address Sara provided.  To Defendant's surprise when he arrived at the appointed time and place for the liaison, Sara was not awaiting him, but police officers were.  Learning that he had been part of an undercover sting, Defendant was arrested.

Defendant was indicted for violating 18 U.S.C. § 2422(b),[1] which prohibits use of the Internet to attempt to persuade a minor to engage in sexual activity that, had it been consummated, could have resulted in criminal charges under state or federal law.  The indictment listed three Alabama statutes that Defendant could have been charged with violating had he consummated a sexual act with the minor

---

[1]  18 U.S.C. § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The indictment lists all four verbs in § 2422(b)—persuade, induce, entice, and coerce.  For ease of reference, we typically use "persuade" as shorthand for all four verbs, but also use the terms "persuade," "induce," and "entice" interchangeably.

girl:  Alabama Code § 13A-6-62 (Rape in the Second Degree); § 13A-6-64 (Sodomy in the Second Degree); and § 13A-6-67 (Sexual Abuse in the Second Degree).  Defendant went to trial and a federal jury convicted him on the above charge.

On appeal, Defendant argues that the district court erred by refusing to instruct the jury that it must unanimously agree as to which of the above three sex acts Defendant would have attempted to persuade the minor girl to perform, had he not been interrupted by arresting officers and had there been a real girl.  We conclude that the district court did not abuse its discretion in rejecting Defendant's proposed unanimity instruction.

## I.    FACTUAL BACKGROUND

On July 2, 2013, Officer James Morton, posing as a 15-year-old girl named "Sara," posted a personal ad on Craigslist's "casual encounters" page.  The ad, titled "BORED TO TEARS – w4m,"[2] stated, "I'm bored and everyone is out of the house till Saturday.  So you can like hit me [up] or whatever.  I may have a friend come over and hang but it aint the same."  Within a half hour, Defendant replied to Sara's ad, "SEND ME A PICTURE AND LETS DO IT, OK."  Sara responded one minute later, "hey. do you have like a pic 2?"  Defendant sent Sara a photo of himself.

---

[2]  The abbreviation "w4m" is shorthand for "woman seeking a man."

Defendant then insisted that Sara send him a photo of herself.  Sara initially ignored Defendant's demands.  She also told Defendant that her family was out of town for the week and that she was home alone.  Sara then sent Defendant a head shot.  Defendant asked Sara, "do you want me to make love to you[?]"  When Defendant suggested that they meet up, Sara told Defendant that she could not drive because she was only 15 years old.  Defendant then told Sara that she is a "pretty lady" and that he would "make her feel goo[d]."  Sara asked Defendant how he would make her feel good, and he responded, "by making love to you is that alright[?]"

Defendant e-mailed Sara, again asking how old she was.  In the midst of e-mails discussing possible times to meet up, Sara restated that she was 15 years old.  Defendant requested a full-body photo of Sara.  She refused, claiming that she did not like the way she looked.  A few minutes later, Defendant wrote to Sara, "sugar, i am kind of scared if you are just 15, they will put me under the jail."  Defendant and Sara agreed to keep their planned rendezvous a secret, and Sara told Defendant the neighborhood she lived in.  Defendant renewed his request for a full-body photo, but Sara refused.  The conversation ended.

Again posing as Sara, Officer Morton posted a second Craigslist ad on November 2, 2013.  The ad, titled "halloween was lame – w4m," stated "My Halloween was so lame.  now my weekend and this week just got boring before it

4

even like starts.  There aint nothing to do or anyone who wants to do anything.

Bored."  Eleven days later, Defendant replied to the ad, "i want to make love to

you"; he also provided his phone number.  Defendant and Sara exchanged e-mails.

Defendant realized that Sara was the same 15-year-old girl he had been e-mailing

in July.  Defendant asked if he could visit Sara at her apartment.  Citing her

mother's presence, Sara declined, but suggested that they meet over the weekend

instead.

The two did not communicate for more than a week.  Defendant then re-

initiated the conversation.  Sara provided her cell phone number and Defendant

called her.[3]  After the call, Sara e-mailed Defendant her address and Defendant

replied, "I AM MY WAY."  Police detained Defendant when he arrived at the

address Sara provided, and he was later arrested.

Defendant was indicted on one count of violating 18 U.S.C. § 2422(b).

Specifically, the indictment charged that Defendant had attempted to persuade an

individual whom he believed to be a minor to engage in sexual activity, which, had

it occurred, could have resulted in state criminal charges against Defendant under

Alabama Code § 13A-6-62 (second-degree rape), § 13A-6-64 (second-degree

sodomy), or § 13A-6-67 (second-degree sexual abuse).

---

[3]  Officer Morton's female colleague pretended to be Sara during the phone call.

## II.    DISCUSSION

### A.    Defendant's Contention

Defendant appeals his conviction, arguing that the district court erred in refusing to give his requested instruction that the jury be unanimous as to the particular state statute Defendant would have ultimately attempted to violate. Defendant had requested that the following instruction be given to the jury:

> If, as in this case, the Defendant is accused of having attempted to violate several state statutes which are incorporated by reference in the indictment, your verdict must be unanimous with regard to the attempted violation of at least one of them.

> In other words, if after considering all of the evidence, all twelve of you have not made a unanimous determination that the defendant attempted to violate Code of Alabama 13A-6-62 (rape in the second degree); and/or 13A-6-64 (sodomy in the second degree); and/or 13A-6-67 (sexual abuse in the second degree) then you must find the defendant not guilty.

The district court declined to give the proposed instruction, explaining:  "I think the evidence just has to show that he was trying to entice her . . . to engage in some sort of sexual activity that would be a crime if it were completed . . . under the law of Alabama.  And these [three crimes in the indictment] are just illustrative."

The court instead instructed the jury that in order to convict Defendant under § 2422(b), the jurors must unanimously find that:  (1) "the defendant knowingly used the internet to attempt to persuade, induce, entice, or coerce an individual

6

under the age of 18 years of age to engage in unlawful sexual activity"; (2) "the defendant believed that such individual was less than 18 years of age"; and (3) "if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the laws of Alabama." The court then spelled out for the jury the elements of each of the three sex offenses set out in the indictment.

We review a district court's rejection of a proposed jury instruction for an abuse of discretion. *United States v. Lebowitz*, 676 F.3d 1000, 1014 (11th Cir. 2012). "A district court's failure to give a requested jury instruction is an abuse of discretion if the requested instruction '(1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.'" *United States v. Browne*, 505 F.3d 1229, 1276 (11th Cir. 2007) (quoting *United States v. Eckhardt*, 466 F.3d 938, 947–48 (11th Cir. 2006)). We resolve Defendant's appeal on the first prong of this test. That is, we conclude that his requested instruction did not constitute a correct statement of the law.

> **B.     When a defendant has attempted to persuade a minor to engage in sexual activity that could potentially violate multiple criminal statutes, the jury is not required to unanimously agree as to which statute the defendant's completed conduct would have violated so long as the jury unanimously agrees that the sexual activity being encouraged would violate one of these statutes.**

7

Defendant used the Internet to attempt to persuade a person whom he believed to be a minor to engage in a sex act to be performed in the State of Alabama.  His conduct was sufficient to violate § 2422(b) if the completed sexual activity he attempted to induce would have constituted a criminal offense under the laws of Alabama.  As noted, the indictment listed three Alabama statutes that Defendant could have potentially been charged with had he engaged in sexual activity with a 15-year-old girl:  Section 13A-6-62(a)(1) (Rape in the Second Degree) makes it a crime to engage in sexual intercourse with a member of the opposite sex who is less than 16 and more than 12 years old.[4]  "Sexual intercourse" is defined as having "its ordinary meaning and occurs upon any penetration, however slight . . . ."  Ala. Code § 13A-6-60(1).  Section 13A-6-64(a)(1) (Sodomy in the Second Degree) prohibits deviate sexual intercourse with another person who is less than 16 and more than 12 years old.[5]  Deviate sexual intercourse is defined as "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another."  *United States v. Owens,* 672 F.3d 966, 969 (11th Cir. 2012) (citing Ala. Code § 13A-6-60(2)).  Finally, § 13A-6-67(a)(2) (Sexual Abuse in the Second Degree) makes it a crime for a person to subject to sexual conduct a person who is less than

[4]  The statute requires that the actor be at least 16 years old and at least two years older than the "victim."  Defendant was 69 years old at the time of the offense.

[5]  This statute requires that the actor be at least 16 years old.

8

16 but more than 12 years old.[6]  "Sexual conduct" is defined as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."  *Pettibone v. State*, 91 So. 3d 94, 117 (2011) (citing Ala. Code § 13A-6-60(3)).

The above statutory violations listed in the indictment seemingly capture the range of illicit sexual conduct that could be covered by the phrase "I want to make love to you," when those words are being uttered by an adult male who is trying to entice a 15-year-old girl to meet with him.  Defendant, however, argues that the jury was required to pick out and unanimously agree as to which one of the three listed sexual acts he was actually attempting to persuade Sara to commit.  In other words, if some jurors believed that Defendant intended to entice Sara to engage in sexual intercourse, while others leaned toward the possibility that Defendant's preferred sex act might have been "deviate" intercourse, while still other jurors believed that Defendant would have sought only sexual contact during his meeting with Sara, then according to Defendant, he would be guilty of no crime at all.  He makes this argument even though any one of the above acts would violate Alabama law, and thereby render him guilty of violating § 2422(b), and even though the jury in the above hypothetical would have unanimously concluded that Defendant had attempted to persuade the minor to engage in sexual activity that constitutes a

---

[6]  For this statute, the actor must be at least 19 years old.

violation of Alabama state law.  We find Defendant's argument unpersuasive.

As to the legal premise underlying his position, Defendant correctly notes that a jury cannot convict unless it has unanimously found that each element of a criminal offense has been proved beyond a reasonable doubt.  It is true that "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each *element* [of the offense]."  *Richardson v. United States*, 526 U.S. 813, 817 (1999) (emphasis added).  At the same time, not every fact important to a determination of guilt constitutes an element of the offense.  And as to any fact that is not an element, unanimity by jurors as to the proof of that fact is not required.  Specifically, a jury need not unanimously decide "which of several possible sets of underlying brute facts make up a particular element, say, which of several possible *means* the defendant used to commit an element of the crime."  *Id*. (emphasis added).

In short, if a fact is an element, the jury must unanimously agree that this fact has been proved beyond a reasonable doubt; but if a particular fact is nothing more than a possible means by which a defendant met an element of the offense, then no unanimity is required.  Not surprisingly, Defendant argues that the particular state statute that he would have violated had he succeeded in his plan to engage in sexual activity with Sara is an element.  More specifically, he contends that when the jury is given a choice of possible criminal statutes implicated by a

defendant's attempted conduct, it must pick the right one, and do so unanimously. He cites to the Supreme Court's decision in *Richardson, supra*, in support of his argument. Both in its legal reasoning and in the type of statute it was examining, however, *Richardson* is distinguishable.

In *Richardson*, the defendant had been convicted of violating the federal continuing criminal enterprise statute (CCE), which prohibits a violation of a federal drug statute as part of a continuing series of federal drug violations and which requires the imposition of an enhanced minimum 20-year sentence. *See* 21 U.S.C. § 848(a). The Supreme Court assumed that to prove a continuing series of violations, the Government must prove the defendant had committed at least three such prior violations. *Richardson*, 526 U.S. at 818. Because the case before the Court spanned a seven-year period of time, the Government had introduced evidence of numerous drug transactions that could potentially qualify as part of a continuing series of violations. At issue was whether the jury had to cull from this long list of transactions at least three particular transactions that it could unanimously agree constituted a violation of federal drug law. The Supreme Court held that the jury must do so because the constructive statutory requirement of at least three prior drug offenses was an element of the offense.

Clearly, the Supreme Court was examining a very different type of statute than the one at issue here. As the Court noted, the particular question concerning

11

unanimity was before it only because the statute required proof of multiple prior crimes and because the Government had introduced evidence that the defendant may have committed more of these crimes than was "legally necessary to make up a 'series.'" *Id.* In other words, had the Government introduced evidence of only three potential transactions, the jury's unanimous verdict of guilt would necessarily have demonstrated its conclusion that these three transactions constituted violations of federal drug law. But given the proof of numerous potential violations of the law, the Court rejected the Government's argument that the jury merely had to agree that the defendant had committed three such prior drug crimes, without also having to agree about which acts, among multiple transactions, constituted the three prior offenses. *Id.* Without proof that the defendant had committed three prior predicate crimes, there could be no CCE violation. But if the jury were not required to treat the commission of three prior violations as an element, the Court feared that with a defendant who has been involved in numerous acts that could potentially constitute a criminal violation, the jury might be prone to "avoid discussion of the specific factual details of each violation," permitting "wide disagreement among the jurors about just what the defendant did, or did not, do." *Id.* at 819. In such a scenario, the potential for unfairness looms, as the jury might simply squint at all the evidence and conclude that, with so much bad conduct, "where there is smoke there must be fire." *Id.*

12

In this case, however, the operative statute does not require the commission of a particular number of prior crimes, such that precision is required to ensure that the Government has met its burden of proving that a defendant involved in a lot of shady dealings was actually guilty beyond a reasonable doubt of committing the requisite number of those crimes. In fact, § 2422(b) does not require that the defendant commit any prior crime at all nor that the defendant actually engage in any unlawful sexual activity with the minor.[7] Instead, "§ 2422(b)'s underlying proscribed criminal conduct is the 'persuasion, inducement, enticement, or coercion of the minor *rather than the sex act itself.*'"[8] *United States v. Yost*, 479 F.3d 815, 819 n.3 (11th Cir. 2007) (emphasis added) (quoting *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004)); *see also United States v. Lee*, 603

---

[7] Indeed, the defendant need not even be the person with whom the defendant attempts to persuade the minor to engage in sexual relations. Section 2422(b) prohibits a person from persuading, inducing, enticing, or coercing a minor to engage in sexual activity "for which *any person* can be charged with a criminal offense" (emphasis added), or attempting to do so. Accordingly, a defendant could be found guilty of violating this statute if he attempted to, or actually did, persuade a minor that she should engage in an unlawful sex act with one of the defendant's friends.

[8] Given this definition of the *actus rea*, Defendant's requested instruction was not a correct statement of the law because Defendant requested an instruction directing the jury that it must unanimously determine that he attempted *to violate* a particular state statute. As explained, there is no requirement that a defendant attempt to violate a statute. Section 2422(b) only requires that a defendant attempt to entice a minor to engage in an act that would be illegal. Thus, even assuming merit in Defendant's argument that the jury had to be unanimous as to the particular statute involved, his requested instruction nonetheless incorrectly stated the law.

F.3d 905, 916 (11th Cir. 2010).[9] Thus, "if a person *persuaded* a minor to engage in sexual conduct . . . without then actually committing any sex act himself, he would nevertheless violate § 2422(b)." *Murrell*, 368 F.3d at 1286.

In addition, the statute covers not just the actual persuasion of a minor to engage in sexual activity, but also an attempt to do so. A defendant is guilty of attempt when (1) he has a specific intent to engage in the criminal conduct for which he is charged and (2) he took a substantial step toward commission of the offense. *Id.* at 1286. Thus, a defendant charged with attempting to violate § 2422(b) can be found guilty upon proof that he attempted to persuade, entice, or induce a minor to engage in an unlawful sexual act. *Id.* Moreover, the existence of "an actual minor victim is not required for an attempt conviction under § 2422(b)," *United States v. Lanzon*, 639 F.3d 1293, 1299 (11th Cir. 2011) (quoting *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002)), so long as the defendant "intended to cause assent" on the part of a minor and "took a substantial step toward causing assent, not toward causing actual sexual contact." *Id.* (citation

---

[9] This interpretation of the statute has garnered broad support among our sister circuits. *See, e.g.*, *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007) ("Section 2422(b) criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor."); *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005) ("Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act."); *United States v. Pierson*, 544 F.3d 933, 939 (8th Cir. 2008) ("It is sufficient for the government to prove that the defendant intended to persuade or entice a minor to engage in illegal sexual activity."); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) ("Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.").

omitted).

The distinctions between the two statutes are important because *Richardson* was driven by a close textual analysis of § 848(c), which defines the term "continuing criminal enterprise." In particular, the Supreme Court emphasized that it construed § 848(c) to require that the defendant have actually committed at least three previous violations of federal criminal drug law. Section 2422(b) articulates no comparable requirement. Instead, § 2422(b) requires that the defendant attempt to induce a minor to engage in sexual activity that would violate state or federal law. There is no dispute that Defendant arranged for a meeting with someone he thought to be a minor girl,[10] and that he did so for the purpose of persuading her to allow him to "make love" to her. The usual meaning most people would attribute to that phrase is probably "sexual intercourse." But the phrase "making love" could also conceivably include deviate sexual intercourse or sexual contact. And it is undisputed that any one of the above three sex acts, when engaged in with a minor, would violate § 2422(b).

To recap, in *Richardson*, the defendant had engaged in a multitude of acts, but to be convicted of a CCE offense, the Government had to prove that the

---

[10] At one point in his e-mail conversation with Sara, Defendant acknowledged his concern that he might be put "under the jail," given Sara's age. That concern, however, did not slow him down when Sara finally gave him her address. Receiving that information, Defendant responded, "I AM MY WAY," and immediately scurried to this address to meet with Sara, where he was arrested.

15

defendant had actually committed at least three prior drug offenses. The Supreme Court concluded that absent a unanimous verdict agreeing on at least three specific prior acts that constituted a drug violation, the jury's assessment of the evidence would be too unfocused, leading to the possibility that the defendant could be convicted based on just the jury's gut feeling that, given all the defendant's misconduct, he must have engaged in at least three violations of the law. The risk of unfairness that concerned the Supreme Court in a prosecution under § 848 does not arise in a prosecution for attempted enticement, nor does it arise under the specific facts of this case. Here, the only evidence concerning the sexual activity Defendant had in mind was his own words, and he disputes none of those words. So long as the jury concluded that when Defendant said he wanted to make love to Sara, he intended to try to persuade her to engage in either sexual intercourse, deviate sexual intercourse, or sexual contact, there could be no verdict other than guilty—because each of these three acts violates Alabama law. And the jury obviously so concluded.

Indeed, in discussing the distinction between an element and the means of satisfying an element, *Richardson* provides an example that supports our conclusion that the jury did not have to unanimously decide which of the three state statutes would be violated by Defendant's intended conduct, so long as all twelve jurors agreed that Defendant intended to persuade the minor to engage in

16

sexual conduct that would violate at least one of them. 526 U.S. at 817.

Specifically, in noting that a jury is not required to decide unanimously which of

several means a defendant has used to commit an element of the crime, *Richardson*

posed the example of a robbery statute containing an element requiring that the

defendant have used force or the threat of force. With such a statute, the Supreme

Court stated, "some jurors might conclude that the defendant used a knife to create

the threat; others might conclude he used a gun. But that disagreement—a

disagreement about means—would not matter as long as all 12 jurors unanimously

concluded that the Government had proved the necessary related element, namely,

that the defendant had threatened force." *Id.* Similarly, in *Schad v. Arizona*, 501

U.S. 624 (1991), the Supreme Court upheld as constitutional a general verdict of

guilt as to a first degree murder charge in which the alternative statutory theories of

premediated or felony murder were charged. In rejecting an argument that the jury

had to unanimously agree as to which theory had been proved, the plurality

opinion noted that the Court's precedent had held that a murder conviction was

valid even though the indictment charged that the death occurred through both a

shooting and drowning, meaning that a unanimous verdict was not required as to

which method actually caused the victim's death. *Id.* The Court further stated,

"We have never suggested that in returning general verdicts in such cases the

jurors should be required to agree upon a single means of commission, *any more*

17

*than the indictments were required to specify one alone. . . .* '[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.'" *Id.* at 631–32 (emphasis added).

So it is in this case.  Fleshing out the Supreme Court's robbery example, assume a bank robber whose intended and attempted crime is foiled as he is about to enter the bank.  When arrested, the defendant is found to be armed with both a machete and a gun.  The jury cannot be sure which weapon the would-be robber would have brandished when demanding money.  Some jurors may lean toward the gun; others may be partial to thinking the defendant might have instead displayed the machete.  And of course, how can jurors be certain when the defendant, himself, may not have known which weapon he would pull at the crucial moment?  But the inevitable uncertainty about which weapon the defendant would have ultimately brandished, which could well prompt a lack of unanimity by a jury on this same point, does not mean that the defendant's act of attempted robbery thereby evaporates into the ether.  Stated another way, because the particular weapon that the defendant may have ultimately used to commit the crime would have only been a means of threatening force, which was the element of the crime, unanimity as to the means envisioned by the defendant was not required.

Similarly here, Defendant clearly intended to persuade a minor to engage in sexual activity.  We know this because he stated repeatedly that he wanted to make

18

love to the young girl and he was arrested when he arrived at her apartment for their liaison arranged for just this purpose. Granted, of the three sex acts listed in the indictment, one cannot know for sure which particular sex act Defendant might have ultimately attempted to entice the girl to perform, had circumstances permitted him to do so. Like the robbery example above, Defendant, himself, may have been unsure exactly which sex act he would have ultimately pursued, with his final decision likely depending on his own mood at the moment of seduction, as well as the willingness of the girl as to the particular sex act she was agreeable to. But the particular sex act that Defendant might have ultimately attempted to induce is only the means of satisfying the element in this case: an attempt to persuade a minor to engage in an unlawful sex act. As long as the jury could unanimously conclude that Defendant was attempting to persuade Sara to perform *some* unlawful sex act—whichever one of the three it might have turned out to be—the jury could properly find Defendant guilty of violating § 2422(b). And a jury could reasonably conclude that the conduct underlying any one of the three Alabama statutes would be deemed to constitute an act of making love, which is what Defendant indicated he wanted to do with Sara. The fact that a jury might not be absolutely sure which precise sex act Defendant would have actually pursued at the critical moment does not thereby immunize him from conviction for attempting to

19

violate § 2422(b) if the jury could reasonably infer that any of these acts would have been unlawful.[11]

We are not alone in reaching the above conclusion. The Sixth Circuit addressed the same argument in *United States v. Hart*, 635 F.3d 850, 855–56 (6th Cir. 2011), and we find that court's reasoning to be persuasive. In *Hart*, the defendant had communicated via the Internet with someone he thought to be a 14-year-old female, but who was in reality an undercover detective. *Id.* at 853. After sexually explicit conversations, the defendant set up a date with the young girl at a bowling alley. *Id.* When he arrived there, he was arrested and later charged with violating § 2422(b). *Id.* The indictment alleged that defendant had attempted to persuade a minor to engage in sex acts that were in violation of the law, and listed two Kentucky statutes that would have been violated by the sex acts that were the object of the defendant's attempted persuasion: sexual intercourse with a person under the age of 16 and sodomy (or deviate sexual intercourse) with someone under the age of 16. *Id.* at 854. The elements of these Kentucky statutes are

---

[11] The logical import of Defendant's argument is to require the Government to choose just one Alabama statute on which to rest a charge of attempted enticement under § 2422(b). But had the Government followed Defendant's apparent lead and in the indictment listed only the Alabama statute prohibiting sexual intercourse, for example, one can reasonably predict that at trial Defendant would have tried to whipsaw the Government by arguing that the jury should acquit because it could not be sure that Defendant intended to entice the minor girl to engage in sexual intercourse, as opposed to a different unlawful sexual act not set out in the indictment. *Schad, supra*, noted that just as the jury does not have to unanimously agree on a single means of committing an offense, the indictment is likewise not required to specify just one means alone.

20

virtually identical to those of its Alabama counterparts listed in the indictment in this case. Similar to Defendant's contention in this case and relying on *Richardson*, the defendant in *Hart* argued that the jury should have received an "augmented" unanimity instruction that required it to identify on a verdict form which Kentucky statute it unanimously concluded the defendant had violated. *Id.* at 854–55.

For the same reasons we conclude that a unanimity instruction was not required in the present case, the Sixth Circuit rejected the defendant's argument to the contrary. Noting that the listed Kentucky criminal offenses are not elements of the federal offense, in contrast to the prior convictions that were an element of a CCE offense in *Richardson*, the court held: "The government need only prove, and the jury unanimously agree, that the defendant attempted to persuade a minor to engage in sexual activity that would have been chargeable as a crime if it had been completed . . . .There is no requirement under 18 U.S.C § 2422(b) that they had to unanimously agree on the specific type of unlawful sexual activity that he would have engaged in." *Id.* at 856. Moreover, acknowledging the existence of a Seventh Circuit decision that reached a different conclusion on this same question, *United States v. Mannava*, 565 F.3d 412 (7th Cir. 2009), the Sixth Circuit disagreed with the reasoning of that decision, as do we. *Hart*, 635 F.3d at 855–56.

In *Mannava*, the defendant had engaged in e-mail conversations with an

undercover detective posing as a 13-year-old girl and they arranged to meet at an ice cream parlor. 565 F.3d at 414. Indicted for violating § 2422(b), the defendant was charged with "having engaged in sexual activity chargeable as criminal offenses under Indiana law," in violation of § 2422(b). *Id.* The defendant filed a bill of particulars as to what that Indiana law might be and the Government responded, identifying two statutes: an Indiana statute that prohibits vicarious sexual gratification (inducing a child under 16 to touch or fondle himself with an intent to arouse) and a second statute that "forbids an adult knowingly to solicit a child who . . . the adult believes, is under 14 to engage in sexual activity." *Id.*

On appeal, the defendant complained that the district court should have instructed the jury that it could convict only if it unanimously agreed that the defendant had violated one of the Indiana statutes. *Id.* at 415. The Seventh Circuit agreed. It concluded that it would be impermissible for half the jury to conclude that the defendant had violated the fondling statute while the other half agreed only that the defendant had violated the solicitation statute. *Id.* But *Mannava* bases its decision on an interpretation of § 2422(b) that is at odds with our and other courts' interpretation of that statute. *See supra* at 14 n.9. In finding error, the *Mannava* court seemed to be under the misimpression that § 2422(b) requires that a defendant have actually violated the listed state statute: "The liability created by 18 U.S.C § 2422(b) depends on the defendant's having violated another statute,

22

and the elements of the offense under that other statute must therefore be elements of the federal offense in order to preserve the requirements of jury unanimity." *Mannava*, 565 F.3d at 415. But as explained above, § 2422(b) does not require that a defendant actually violate the listed state statute. It requires only that the defendant entice, persuade, or induce a minor to perform acts that would violate the statute if completed, or that the defendant attempt to do so.[12]

In summary, when a defendant has been charged with a violation of § 2422(b) by attempting[13] to persuade a minor to engage in sexual activity for which any person can be charged with a criminal offense; when the intended conduct could potentially violate more than one criminal statute; and when the indictment lists more than one criminal offense that the envisioned sexual activity potentially violates, the jury does not have to unanimously guess at the one statute

---

[12] The Seventh Circuit has subsequently held that § 2422(b) criminalizes persuasion (and an attempt to persuade) rather than the underlying sexual activity. *United States v. Berg*, 640 F.3d 239, 250–51 (7th Cir. 2011) ("Because Berg was charged with a § 2422(b) attempt, the government's burden was to prove beyond a reasonable doubt that he intended to persuade, induce, or entice someone whom he believed was a minor to engage in sexual activity—not that he intended to engage in sexual activity."). *Berg* did not mention the earlier *Mannava* decision.

[13] Obviously, if a defendant has successfully persuaded a minor to engage in an unlawful sexual act, this will typically mean that the act was completed and the likelihood of multiple potential statutory violations is greatly reduced. Indeed, in such a circumstance, the defendant will be charged not with attempt, but with actually enticing a minor to commit the specific sex act that was completed and that will be listed in the indictment. With attempted persuasion, however, the charge is based on sexual conduct not yet initiated or completed. A charge of attempted persuasion—particularly when the defendant does not convey his desired sex act in language that explicitly tracks the elements of a particular offense—carries a greater potential to implicate multiple statutes and creates a greater need for the prosecution to cover all its statutory bases by listing each of these potential statutes in the indictment.

that a defendant's successful persuasion would have violated so long as the jury unanimously agrees that that sexual activity to be enticed would violate one of the listed statutes had it been successfully carried out.

### C.    The jurors were necessarily unanimous that Defendant could have been charged with second-degree sexual abuse.

Even if there were a requirement that the jury unanimously agree that a particular statute would have been violated by completed conduct that a defendant attempts to persuade a minor to engage in, that requirement was met in this case, given the elements of the particular statutes that were listed in the indictment.

The indictment listed three Alabama sex offenses for which Defendant could have been charged had he successfully persuaded Sara to engage in sexual activity with him:  (1) Ala. Code § 13A-6-62 (second-degree rape), (2) Ala. Code § 13A-6-64 (second-degree sodomy), and (3) Ala. Code § 13A-6-67 (second-degree sexual abuse).  As noted *supra*, second-degree rape prohibits sexual intercourse with a minor of the opposite sex who is under the age of sixteen; the term has its ordinary meaning and occurs upon any penetration, however slight.  Second-degree sodomy prohibits "deviate sexual intercourse," which is defined as "[a]ny act of sexual gratification between unmarried persons involving the sex organs of one person and the mouth or anus of another," with a person under the age of sixteen.  Second-degree sexual abuse makes it a crime to subject a person under the age of sixteen to sexual conduct, which is defined as "[a]ny touching of the sexual or other intimate

24

parts of a person not married to the actor, done for the purposes of gratifying the sexual desire of another party." See generally *supra* at 8–9.

Through his e-mail communications, Defendant had indicated to Sara that he wanted to meet her so that he could make love to her. Finally, a meeting was set up for that purpose at Sara's home. Defendant then took a substantial step to further this attempt by traveling to Sara's apartment, where he was arrested. If Defendant had actually met with Sara and made love to her via sexual intercourse, he would have violated Alabama's second-degree rape statute. If instead, Defendant had made love by engaging in the acts set out in the second-degree sodomy (deviate sexual intercourse) statute, a completed act would have violated that statute. Finally, if Defendant had instead persuaded Sara to engage in sexual contact, then Alabama's second-degree sexual abuse statute would have been violated.

Notably, second-degree sexual abuse necessarily occurs whenever sexual intercourse or sodomy are performed.[14] As defined, second-degree sexual abuse only requires the touching of an intimate or sexual part of another person for purposes of gratifying the sexual desire of either party. Clearly, either sexual

---

[14] *Cf. Parker v. State*, 581 So. 2d 1211, 1213 (Ala. Crim. App. 1990) (holding that the trial court erred by refusing to instruct the jury on second-degree sexual abuse, which is a lesser-included offense of first-degree rape); *King v. State*, 574 So. 2d 921, 928–29 (Ala. Crim. App. 1990) (holding that first-degree sexual abuse is a lesser-included offense of first-degree rape); *Hutcherson v. State*, 441 So. 2d 1048, 1052 (Ala. Crim. App. 1983) (holding that first-degree sexual abuse is a lesser-included offense of first-degree sodomy).

intercourse or sodomy would meet all the elements required to prove sexual contact.

So, playing out Defendant's feared jury scenario, it becomes clear that, in convicting him, the jury was necessarily unanimous in concluding that, at the least, Defendant had attempted to persuade Sara to engage in sexual contact. And if that is so, then the jury was necessarily unanimous in its agreement that Defendant had attempted to persuade a minor to engage in unlawful sexual activity. Specifically, if we assume that four jurors thought that Defendant had attempted to persuade Sara to engage in sexual intercourse, those same jurors would have also necessarily agreed that Defendant had attempted to persuade Sara to engage in sexual contact. If four other jurors construed Defendant's conduct as being an attempt to persuade Sara to engage in an act of sodomy, again those jurors would necessarily have concluded that Defendant had also attempted to persuade Sara to engage in sexual contact. Finally, if the last four jurors believed that in saying he wanted to make love to Sara, Defendant had intended to persuade her only to engage in sexual contact, then obviously those jurors found that Defendant's intent, if effectuated, would have violated the sexual contact statute. In short, all twelve jurors determined, at the very least, that Defendant had attempted to persuade Sara to engage in sexual conduct, and that is all that was required to convict Defendant of violating § 2422(b).

Accordingly, even if unanimity were required as to the specific sex act that Defendant intended to attempt to persuade Sara to perform at their assignation, the jury was necessarily unanimous in making that finding.

## III.    CONCLUSION

For the above reasons, we reject Defendant's contention that the district court erred in refusing to give Defendant's requested unanimity charge and we therefore **AFFIRM** Defendant's conviction.

JORDAN, Circuit Judge, concurring in the judgment.

Differentiating between the elements of a crime and the means of committing an offense can sometimes be difficult. As the Supreme Court recognized in *Schad v. Arizona*, 501 U.S. 624, 639 (1991) (plurality opinion), there is no "bright-line test" for "deciding, as an abstract matter, what elements an offense must comprise."

Acknowledging that difficulty, it seems to me that the question of whether or not a person "can be charged with a criminal offense" is an element of the offense set forth in 18 U.S.C. § 2422(b). Our pattern jury instructions say that it is an element of the offense, and the district court instructed the jury that it is an element of the offense. *See* Eleventh Circuit Criminal Pattern Jury Instructions, Offense Instruction No. 92.2 (2016); D.E. 60 at 238. *See also United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004) (an element of criminal liability under § 2422(b) is that a person must knowingly engage in sexual activity that would constitute a criminal offense). Mr. Jockisch was therefore entitled to a unanimity instruction on this element under the rationale of *Richardson v. United States*, 526 U.S. 813, 818–19 (1999) (recognizing "the tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law" and emphasizing the risk that, unless jurors are "required to focus upon specific factual

28

detail, [they] will fail to do so, [instead] simply concluding . . . that where there is smoke there must be fire").

I agree with, and cannot improve upon, the Seventh Circuit's position on this issue in a similar § 2422(b) case:

> [I]t was an error to allow the jury to convict without a unanimous determination that the defendant had violated one or both of the Indiana statutes, and the error should be corrected in any retrial. Denying that there was an error, the government argues that if half (or some other fraction) of the jurors had agreed among themselves that [the defendant] had violated just one of the [state] statutes and the rest of the jurors had agreed among themselves that he had violated just the other statute, the conviction would be valid because the offense of which he was convicted was the federal offense of committing an offense or offenses chargeable under state law, and the jury was unanimous that he had committed *that* offense. This reasoning leads to the absurd conclusion, which the government's lawyer embraced at argument while acknowledging its absurdity, that the government could charge a defendant with violating the federal statute by violating 12 state statutes and that he could be properly convicted even though with respect to each of the 12 state offenses 11 jurors thought him innocent and only one thought him guilty. If a further *reductio ad absurdum* is desired, imagine a federal statute that made it a crime to commit a chargeable offense on any federal property, and a prosecution in which the government charged that the defendant had committed 25 such offenses and the jury rendered a general verdict of guilty.

*United States v. Mannava*, 565 F.3d 412, 415 (7th Cir. 2009).

The majority's rationale has an air of inevitability, but that is only because, in this case, the government alleged and proved that Mr. Jockisch's attempted conduct (having sex with the fictional minor) would have violated at least one of three Alabama statutes, each of which have a common element (sexual contact).

29

As a result, not instructing the jury on unanimity was harmless. *See generally Neder v. United States*, 527 U.S. 1, 13–15 (1999). But that may not always be the case.

Imagine a § 2422(b) prosecution where the defendant contacts a real minor across state lines—say from Florida to Georgia—and the conversations between the two indicate that sexual activity is planned in both states. This hypothetical is not far-fetched, as similar conduct has been charged in other § 2422(b) cases. *Cf. United States v. Tykarsky*, 446 F.3d 458, 463 n.2 (3d Cir. 2006) (alleging, in § 2422(b) case, that planned conduct could have been charged as statutory rape under the laws of New Jersey and Pennsylvania).

If the government in such a case charges that the attempted sexual conduct—whatever it may be—constitutes various different criminal offenses under the laws of both Florida and Georgia, and those laws share little or nothing in common, would we allow a jury to return a verdict without unanimously concluding whether or not the attempted conduct would have violated a given law? As the Seventh Circuit explained in *Mannava*, the answer is no.

Accordingly, and with respect, I concur in the judgment.

30